# CHARLESTON ·

STATE *ex. rel.* DILLON v. GRAYBEAL, *Assessor.*

Submitted August 8, 1906.    Decided October 23, 1906.

1. MANDAMUS—*Compelling Assessment—Authority of State Tax Commissioner.*

    As relator, the State Tax Commissioner may invoke the aid of a court by its writ of *mandamus*, to compel an assessor to make an assessment in conformity with the requirements of the law, except in so far as he has discretionary powers.    (p. 359.)

2. SAME—*Value of Real Estate.*

    A bank, owning shares of the capital stock of a corporation which has caused itself to be assessed with its property in the manner prescribed by section 77 of chapter 29 of the Code, as amended by chapter 35 of the Acts of 1905, and having elected to have its capital stock, surplus and undivided profits assessed to it, in conformity with the provision of section 79 of said chapter of the Code, as so amended, is entitled to have the value of such shares deducted, along with the value of its real estate and property exempt from taxation, in the ascertainment of the taxable value of its capital stock, surplus and undivided profits.    (p. 362.)

3. SAME—*Value of Real Estate.*

    · The value of real estate, owned by the banks and trust companies, to be deducted in ascertaining the taxable value of their capital stock, surplus and undivided profits, under the provisions of section 79 of chapter 29 of the Code, as amended by chapter 35 of the Acts of 1905, is the assessed value, not the actual value thereof at the time of the assessment.    (p. 370.)

4. SAME—*Double Taxation.*

> While double taxation, in a practical sense, is not always viola-
> tive of the provisions of the Constitution, requiring equality in
> taxation, courts, in construing statutes, always presume that it was
> not intended, unless the legislative intent to impose it is clearly
> manifest. Doubts are always resolved against it.   (p. 370.)

Application by the State, on the relation of Charles W. Dillon, State Tax Commissioner, for a writ of *mandamus* to J. Walter Graybeal, assessor of McDowell county, and the McDowell County Bank.

*Writ Awarded.*

C. W. DILLON, MOLLOHAN, McCLINTIC & MATHEWS, for petitioner.

JOHN H. HOLT, RUCKER, ANDERSON, STROTHER & HUGHES, and WYNDHAM & STOKES, for respondents.

POFFENBARGER, JUDGE:

The State, at the relation of Charles W. Dillon, State Tax Commissioner, seeks a writ of *mandamus* to compel J. Walter Graybeal, Assessor of McDowell county, to assess the McDowell County Bank in accordance with what the relator conceives to be the law applicable to the assessment of said bank, in view of the nature and character of its property and assets. If his conception of the law be right, the value will be about $115,000.00, and if it be as assumed by the assessor, the assessed value will be about $29,-000.00. They did not disagree concerning the total value of capital, surplus and undivided profits of the bank, which is $154,519.36, but they did differ respecting the amounts and character of deductions to be made from said total values in ascertaining the sum with which to charge the bank on the personal property book. These differences involves two items, one of which is the tangible property, (real estate, furniture and fixtures,) the assessed value of which is $35,-670.00 and its actual value $71,721.71; and the other, five hundred shares of the capital stock of the Pocahontas Consolidated Coal Company preferred, of the aggregate par value of $50,000,00, owned by the bank. The assessor proposes to deduct $71,721.71 on account of the tangible property and $50,000.00 on account of the Coal Company stock, while the State insists that only $39,333.47 should be deducted, it

being the aggregate assessed value of the real estate, furniture and fixtures, together with unearned discounts, amounting to $3,663.47.

Though the right of the State Tax Commissioner to enforce, by proper remedies, the performance of legal duty by an assessor is not denied or questioned here, it is well, in view of the importance and extent 'of the power thus claimed and asserted, to ascertain whether it is well founded. Chapter 4 of the Act of 1904 created the office of Tax Commissioner, and that Act, together with chapter 35 of the Acts of 1905, amending chapter 4 of the Acts of 1904, conferred upon said officer certain supervisory powers over the assessment and collection of taxes and levies, which had previously been vested in the Auditor of the State and probably increased and extended them. Certain it is that, in transferring these powers from the Auditor to the State Tax Commissioner, the Legislature did not narrow them in any respect. The provisions of the two acts by which the transfer was made and the duties of the Tax Commissioner prescribed, confer very broad powers in general terms and supplement them by specifications and enumerations which clearly show that they are intended to vest all the authority which this Court, in *State* v. *Buchanan*, 24 W. Va. 362, held to have been conferred upon the Auditor by statutes less comprehensive and definite in the terms used. His right to invoke *mandamus* to compel an assessor to perform a legal duty is, we think, perfectly clear.

The statute under which banks are assessed is found in section 79 of chapter 35 of the Acts of 1905 which reads as follows:

"The shares of stock in a bank, trust company or national banking association, shall be assessed at their true and actual value, according to the rule prescribed in section twelve of this chapter, to the several holders of such stock in the county, district and town where such bank, company or association, is located, and not elsewhere, whether such holders reside there or not. The real and actual value of such shares shall be ascertained according to the best information which the assessor may be able to obtain, whether from any return made by such bank, company or associa-

tion to any officer of the state or United States, from actual sales of the stock, from answers to questions by the assessor as hereinafter provided, or from other trustworthy sources. The cashier, secretary or principal accounting officer, of every such bank, company or association, shall cause to be kept a correct list of the names and residences of all the shareholders therein, and the number of shares held by each, which list shall be open to the inspection of the assessors of the county, and of the state tax commissioner; and such cashier, secretary or officer shall answer under oath such questions as the assessor may ask him concerning the matters shown by said list, and concerning the value of said shares, and shall be subject to the same penalties, for failure to do so, which are imposed by law upon individuals failing to answer questions which the assessor is authorized to ask. The taxes so assessed upon the shares of any such bank, company or association shall be paid by the cashier, secretary or proper accounting officer thereof, and in the same manner and at the same time as other taxes are required to be paid in such county, district and town. In default of such payment such cashier, secretary or accounting officer as well as such bank, company, or association, shall be liable for such taxes, and, in addition, for a sum equal to ten per centum of the amount thereof. Any taxes so paid upon any such share may, with interest thereon, be recovered from the owners thereof by the bank, company, association or officer paying them, or may be deducted from the dividends accruing on such shares. The real estate of any such bank, company or association shall be assessed as in other cases, and a proportionate share of such assessed value shall be deducted in ascertaining the market value of the shares. Notwithstanding anything hereinbefore provided for, any such bank, company or association may have its capital stock assessed and may pay taxes thereon as hereinafter provided, and in that case the shares of its capital stock shall not be assessed for taxation. In such case the bank, company or association electing to have its capital stock assessed shall list the same for taxation, within the time prescribed as to other taxpayers, which list shall be made as of the first day of April, and shall be in the form used in making reports to the comptroller of the currency

of the United States, or the state commissioner of banking, as the case may be. It shall be verified by the oath or affirmation of the president, cashier or secretary of such bank, company or association, and be attested by the signature of at least three of the directors. Such report shall exhibit in detail, and under appropriate heads, the resources and liabilities of the bank at the close of business on the thirty-first day of March previous. It shall especially show as of that date, the amount of the capital, surplus and undivided profits, the value of any real estate, and the amount and value of any property exempt from taxation, which property claimed to be so exempt shall be specifically described. Upon consideration of the matters shown by such list, and of any former or other return or report made by such bank to the comptroller of currency of the United States, or the commissioner of banking in this State, and of any other information he may obtain upon the subject, the assessor shall fix the value of said capital, surplus and undivided profits, after deducting the value of such real estate and property exempt from taxation, and enter the same in his personal property book. If the capital stock of such bank, company or association is thus assessed, its real estate shall be assessed and entered in the land books as in other cases. No property shall be considered as exempt from taxation which shall have been purchased or procured for the purpose of evading taxation, whether by temporarily holding the same over the first of April or otherwise, and whether the same be in this State or otherwise."

This section, it will be observed, prescribes, first, the mode of assessment for banks, trust companies and national banking associations, when such bank, company or association does not elect to have the assessment made in another way; and, second, the mode of assessment which must be adopted when the bank, company or association does elect to have the assessment made under it. The first plan of assessment requires the shareholders of the capital stock to be assessed with the actual value of their shares, less the proportionate value of the real estate. Under this plan, the bank itself is not assessed. The shares only are charged to the persons owning them, and, this being done, there is no assessment at all in the name of the bank, except in respect

to its real estate. Payment of taxes on the value of the shares by the share-holders satisfies the demand for taxes. This first part of the section authorizes in express terms only one deduction to be made from the value of the shares, and that is the assessed value of the real estate of the bank. No deduction on account of any exempt property owned by the bank is authorized. Under this plan, the shares will be taxable to the owners thereof at their actual value, less the proportionate value of the real estate, assessed against the bank on the land books, although all its capital, surplus and undivided profits might be invested in government bonds which are not taxable. For some reason, the legislature has seen fit to provide a less onerous plan which becomes available to the bank and its stockholders by the election of the bank to have the assessment made under it. This plan requires the assessment to be made upon the value of the capital, surplus and undivided profits, after deducting the value of the real estate and property exempt from taxation.

Prior to the passage of this statute, shares in banks were required to be listed by their owners and taxed along with their other personal property, unless the bank in which they were caused itself to be assessed with the value of its capital invested or employed. Code 1899, ch. 29 section 41. When a bank did cause itself to be assessed, its personal property was not listed for taxation like that of a natural person. The assessment was made as a single item, called the value of the capital employed, and it was the aggregate value of all the personal property of the bank, not exempt from taxation, including money, credits and investments, less indebtedness of the bank. Code 1899, ch. 29 section 64. The real estate was charged to the bank on the land book and no notice of it taken in ascertaining the amount to be entered in the personal property book. There was no requirement that any tangible property be entered on the personal property book, but it was considered in estimating the value of the capital. Substantially the same method was prescribed for the assessment of individuals and firms not incorporated, engaged in any trade or business taxable by law. Code 1899, chapter 29, section 65. The direct subjects of taxation in these instances were not the several articles of property

owned by the corporation, firm or individual, but the value of the capital used in the business.

The new tax law found in chapter 35 of the Acts of 1905 made very radical changes.  As to all corporations except railroad, foreign insurance and telegraph companies, telephone, pipe line, car line companies, and banks and trust companies, it requires the valuation to be put not upon the capital invested or used, but upon the property owned by them which is required to be listed in the personal property book under several and distinct items.  Until the year 1909, this list is not to include the value of the real estate, but thereafter it shall be listed and returned to the assessor for taxation, but entered in the land book, while all other property returned is to be entered in the personal property book, and the statute, section 78 of said chapter, says the property mentioned in items c. d. e. and f. shall constitute all the property on which any corporation shall be liable to pay taxes.  Items a. and b. in the list to be returned show the amount of capital authorized to be employed by the corporation and the amount of cash capital paid on each share of the stock.  As to these corporations, there is no taxation of the capital stock, but only taxation of the property owned by them as in the case of individuals.  Turning now to section 79, relating to banks and trust companies, it is to be noticed that there is no taxation on their property *eo nomine.* The taxes as to them are assessed against the share holders on the shares owned by them under one plan, or against the bank on account of the value of the capital, surplus and undivided profits; and the capital to be so taxed is defined in that section to be the capital stock, not merely the money employed in carrying on its business.  As to all corporations other than those excepted by sections 77 and 78, the subjects of taxation are the properties owned by them, while in the case of banks and trust companies, the subjects of taxation are the shares in the hands of the holders thereof or the capital stock, surplus and undivided profits.  They are not charged with any property as such in either case.  No property, other than capital stock, surplus and undivided profits, is listed or assessed in their names.

Other provisions to be kept in mind are as follows: "When the property, stock or capital of any company, whether in-

·corporated or not, is assessed to· such company, no person ·owning any share, portion or interest therein, shall be required to list the same, or be assessed with the valuation thereof.'' Section 66, ch. 35 of the Acts of 1905: ''When the property of an incorporated company is assessed as .aforesaid, no individual share holder therein shall be required to list or be assessed with his share, portion or interest in the capital stock of such corporation.'' Section 78, *Idem.* The same rule is applied to shareholders in banks and trust companies when the the assessment is upon the capital stock.

These provisions constitute the basis of claim for deduction of the value of the stock of the coal company owned by the McDowell County Bank, it being admitted that said coal .company has caused itself to be assessed in its own name with all of its property, wherefore the shares of its stock are not to be taxed in the hands of the owner thereof. The ·contention is that this bank, being the holder of shares in said coal company, has the same status, with reference to them as a natural person would have, and that since, if it were a natural person, the shares could not be taxed in its hand, it is entitled to have a deduction made from the value of its capital stock, surplus and undivided profits equal to the value of the shares. It is further contended, in view ·of the provisions above quoted, that the deduction of the value of these shares is expressly authorized by section 79 because they are, within the meaning of that chapter, property ·exempt from taxation.

If we regarded only the letter of the statute, it is apparent that no assessment can be made against any bank upon its property, as such, in the manner in which property is .assessed in the names of natural persons. Neither its tangible property nor its choses in action nor its stocks are listed for taxation. In the case of banks, the specific articles of property owned by them, though imparting value to their ·stock, and being in part its representative, are not the subjects of taxation. They are neither listed nor taxed. They .are simply reported to the assessor for the purpose of aiding him in determining the value of the capital stock, surplus .and undivided profits. The statute says that the assessor, .upon consideration of the matters shown by the list and of

any other information he may obtain upon the subject, shall fix "the value of said capital, surplus and undivided profits, after deducting the value of such real estate and property exempt from taxation, and enter the same in his personal property book." Failure to deduct from the amount of capital, surplus and undivided profits, the value of stock held in another corporation constitutes no violation of the letter of the provisions of the statute above quoted which say that shares in a corporation which has caused itself to be assessed with its property or capital stock shall not be listed or assessed in the name of the owner thereof. In assessing a bank under either of the plans prescribed in section 79, such shares are neither listed nor assessed. The assessment is made upon the capital stock, surplus and undivided profits, things which are wholly different and distinct from other property owned by the bank.

If the legislature intended in this way to burden banks and trust companies somewhat more heavily than natural persons and those corporations which are required to pay taxes on the property they own, no constitutional limitation upon the powers of the legislature is encountered. It is a mere incidental result of which the limitation takes no notice. There are numerous instances of it to be found in the system of law relating to taxation. The owner of real estate owing practically its entire value as mortgaged indebtedness pays taxes on it at its full value, while the mortgagee is taxed on the amount of the debt for which he has a lien upon the property and which may amount to practically its entire value. This, although in practical effect double taxation, is not so regarded by any court. In the recent case of *Harvey* v. *Coal Co.*, 59 W. Va. 605, this Court decided that a lease upon land, already taxed at its full value by the acre, might be put upon the personal property books and made to bear taxation, notwithstanding the practical effect of it is to compel the land owner to pay an additional tax on his land by way of abatement from the rent which he would be able to obtain but for the tax on the lease, and although it requires the lessee to pay a tax on a right carved out of a thing already taxed to its full value. This conclusion was reached by adhering to the legal principle that the lease and the land covered by it are, in law, two separate and

distinct properties.    Here, the distinction between capital stock and the property owned by the bank is much clearer.    The capital stock of a bank, by reason of the franchise under which it operates and the nature of the business it transacts, may have, and often does have, a value far in excess of the aggregate value of all the property it owns.    This has been adverted to by many of the courts in marking this distinction.    Of course the capital stock has some relation to the property in point of fact.    Every conceivable thing, tangible and intangible, has some such connection with some other thing or things, but they are regarded as wholly distinct and individually complete for many purposes.    In the material world, animate and inanimate, relationships are innumerable and incomprehensibly vast, but this does not preclude individuality and complete separation for certain purposes.    So, in the law, discrimination must be made by classes, according to the peculiar nature and character of things.

For the position that several distinct kinds of property are to be found in corporations, many decisions of the Supreme Court of the United States, as well as of the highest courts of the several states, may be cited.    In *Tennessee* v. *Whitworth*, 117 U. S. 129, 136, Chief Justice Waite said: "In corporations four elements of taxable value are sometimes found: 1, franchises; 2, capital stock in the hands of the corporation; 3, corporate property; and 4, shares of the capital stock in the hands of the individual stockholders." In *Farrington* v. *Tennessee*, 95 U. S. 687. Mr. Justice Swayne made the following enumeration of objects liable to be taxed, other than the capital stock of a corporation: "1.    The franchise to be a corporation and exercise its powers in the prosecution of its business.    2.    Accumulated earnings.    3.    Profits and dividends.    4.    Real estate belonging to the corporation and necessary for its business." In *Bank of Commerce* v. *Tennessee*, 161 U. S. 134, the accumulated surplus of a bank was held liable to taxation notwithstanding a provision in its charter which declared that the payment of one-half of one per cent on each share of its capital stock should be in lieu of all other taxes.

The cases, however, in which these distinctions are made

usually arise under statutes in which there is a manifest intent, disclosed by the terms used, to impose a tax upon the franchise alone, rather than to impose a single tax upon both the property and franchise.    The theory of a franchise tax on corporations, measured or estimated by the amount of the business transacted, was advanced and sustained by the Federal Supreme Court in three cases, reported in 6 Wall. 594, 611 and 632, viz.    *Society for Savings* v. *Coite, Provident Institution* v. *Massachusetts and Hamilton Company* v. *Massachusetts.* The principles enunciated in those cases have been greatly extended and applied under various conditions. · In the last one of the three, the statute in question imposed a tax of one-sixth of one per cent. upon the excess of the market value of all the stock of the corporation over the value of its real estate and machinery.    Under general laws imposing taxes, the real estate and machinery were also taxed.    The taxes upon the excess of market value was held to be a franchise tax and not a property tax.    On the ground that it was a franchise tax and not a property tax, the Surpeme Court of the United States held that no deduction could be made on account of non-taxable bonds and securities of the United States in which a very large amount of the capital of the corporation was invested.

A careful examination of the many decisions distinguishing between a tax upon the franchise and a tax upon the property and upholding both against the corporation, will show that the former was purely a franchise tax and not a tax upon both the franchise and the property.    The presumption against any intent on the part of the legislature to impose a double tax either directly or indirectly has always been observed by the courts, and, while they do not deny to the legislature the power to doubly tax property in a practical sense, they seldom or never uphold a construction of the statute which leads to this result, unless the intent is so plainly expressed as to preclude any other view.    In *Tennessee* v. *Whitworth*, 117 U. S. 129, Chief Justice Waite said:    "Double taxation is, however, never to be presumed. Justice requires that the burdens of government shall as far as practicable be laid equally on all, and, if property is taxed once in one way, it would ordinarily be wrong to

tax it again in another way, when the burden of both taxes falls on the same person. Sometimes tax laws have that effect; but if they do, it is because the legislature has unmistakably so enacted. All presumptions are against such an imposition."

In view of this general rule, it is proper to observe here that the policy of this State, as disclosed by the chapter of the legislative acts providing for the assessment of property, is emphatically against taxation of the capital of a corporation in its name and the stock of that corporation in the hands of the holders of its shares at the same time. While such taxation may not be inhibited by the constitutional requirement of equality and uniformity in taxation, it is plain that the legislature deems unwise and impolitic. Technically it may not be double taxation, but practically it is. Therefore, the legislature has expressly exonerated the shareholder when the capital stock or property of the corporation in which his shares are held has been assessed.

Section 29 does not say whether the status of a bank as the holder of stock in another corporation shall be the same as that of a natural person or not. It requires the capital, surplus and undivided profits to be taxed after making certain deductions, in which is included property exempt from taxation. Shares of corporation stock are not exempt from taxation in the ordinary legal sense of the terms, for they are to be taxed in the name of the owner along with his other personal property, if the corporation does not cause itself to be taxed with its property or capital stock. Still it is conditionally exempted in the case of natural persons, and may be so exempted in the case of banks without destroying or impairing so much of the tax imposed upon them as may be regarded in any sense as founded upon the banking franchise. To illustrate, let us suppose a bank, the capital stock, surplus and undivided profits of which, have an aggregate value of $150,000.00 and all the property of which, except the franchise, has an aggregate value of $145,000.00. If $10,000.00 of that property be stock in another corporation and is deducted, it does not relieve the bank of the $5,000.00 which may be supposed to represent the value of the franchise. It simply relieves the bank

from taxation upon a species of property in respect to which all natural persons and many other corporations are entitled to be relieved.    To refuse deduction of the corporation stock, therefore, would be to make a clear and seemingly groundless discrimination against banks and other corporations in respect to taxation.    If it be conceded that the legislature, under its undoubted power to classify persons and properties for purposes of taxation, with reference to the business in which they are engaged, could legally make such a discrimination, it must be remembered that the rules of construction applied by the courts recognize a presumption against it which must be overcome by intent on the part of the legislature plainly manifest in the terms of the statute.    In respect to all other property, such as real estate and choses in action, banks are treated as natural persons, and if any peculiar reason exists for treating them differently in respect to shares of corporate stock, it has not been brought to the attention of the Court and is not perceived.    It may be that the ownership of such shares brings to the bank some advantages in business, but these advantages, whatever they may be, enter into the value of the capital stock of the bank.    The deduction to be made on account of the shares is not their peculiar value to the bank holding them but their market value.    If by a wise use of the franchise in causing capital to be invested in certain shares which bring advantages other than dividends, realized or anticipated, the result is enhancement of the value of the bank stock, not that of the shares it owns, and deduction of the market value of the shares does not take it away.    It remains to be taxed.

The claim of right to deduct the actual value of the real estate instead of its assessed value is predicated upon the failure of the legislature to limit the word "value" in the latter part of section 79 by the use of the word "assessed" in connection with it, as it did in the first part of the section.    To sustain this contention would impute to the legislature either a grave oversight, by which the taxes on vast amounts of values in the capital of banks and trust companies would be lost to the state, counties and municipalities, or an intention to allow these values to escape taxation.    Such institutions are located in the cities and towns.

24

of a prosperous and rapidly growing state.    Their real estate holdings are nearly always city property, constantly increasing in value.    The assessment of real estate made in 1905 is to remain unchanged until the year 1909, while the assessment of banks and trust companies is to be made annually.    As the real estate assessment cannot be changed, opportunities would be afforded in many instances, if the actual, instead of the assessed value, could be deducted, of cutting down the taxable value of the capital of the banks by deducting large valuations on account of real estate, due to appreciation since 1905, on which no taxes could be assessed or levied.    In this case, $35,700.00 was presumably the value of the bank's property when the real estate assessment was made.    Now, it is over $70,000.00.    To allow this large deduction, we must say the legislature intended that, under such conditions, $35,000.00 of the value of the capital of the bank should be released from taxation.    The statement of the proposition works its own refutation.    In limiting the reduction to the assessed value, no possible injustice is done the bank.    In paying taxes on the assessed value of its real estate, and in addition thereto taxes on the aggregate value of its real estate and capital, surplus and undivided profits, less the assessed value of the real estate, a bank pays taxes on nothing more than it owns.    If allowed to deduct a sum larger than the assessed value of the real estate, as an actual value, it would pay on only a part of what it owns.    It cannot be presumed that the legislature intended to do that which the Constitution forbids, namely, exonerate property from taxation.    On the contrary, it is to be presumed that there was an intention to exact from the banks taxes on all the property owned by them, not exempt from taxation, or on which the taxes have not been paid by some other corporation or person.

From these views it results, that so much of the prayer of the petition as relates to the deduction on account of the real estate valuation must be granted and the writ awarded as to it, but refused as to the proposed deduction on account of the coal company stock owned by the bank.

*Writ Awarded.*