# CHARLESTON

## STATE *v.* JOHNSON.

Submitted March 6, 1907.    Decided April 24, 1907.

1. INTOXICATING LIQUORS—*Sale Without License.*
     If one person to whom is consigned C. O. D. whiskey carried by express, agrees, before he receives it, that if another will pay part of the money required to pay for the whiskey he shall have part of it proportionate to his money, and receives from that person money, and with it and his own money pays for the liquor, and receives it from the express agent, and then each takes and uses separate bottles of the whiskey in the presence of each other in the express office, the person to whom the liquor is consigned is not guilty of selling without license   (p. 155.)

2. SAME—*Indictment.*
     The word "unlawfully" is not necessary in an indictment for selling liquor under Code, chapter 32, section 1.   (p. 155.)

Error to Circuit Court, Lincoln County.

Mareen Johnson was convicted of illegally selling liquors, and brings error.

                                        *Reversed.*

D. E. WILKINSON, for plaintiff in error.

CLARKE W. MAY, Attorney-General, for defendant in error.

BRANNON, JUDGE:

In the circuit court of Lincoln county Mareen Johnson was convicted upon an indictment for selling liquors, and was fined twenty-five dollars and sentenced to jail for two months.    He brings the case to this Court on writ of error.

The trial was by the judge in lieu of a jury upon facts agreed.    Two quart bottles of whiskey were consigned by Stone at Cincinnati, Ohio, to Johnson at West Hamlin, in Lincoln county, and shipped to him by Adams Express, without the said Johnson having ordered the whiskey, and without his knowledge that it had been shipped.    On the arrival of the whiskey at West Hamlin the express agent notified Johnson that the whiskey was at the station to be delivered to him on

payment by Johnson of Two Dollars, that sum being the price of the whiskey and express charges for transporting it to Johnson. Johnson not having the money with which to pay said charges went to Adkins and Midkiff and told them that if they would contribute toward the payment of the charges, they should have a proportionate part of the whiskey according to the amounts so paid by them. Thereupon Midkiff paid to Johnson fifty cents and Adkins paid to Johnson fifty cents; and thereupon Johnson, with Midkiff and Adkins, went to the express office and Johnson paid the two dollars to the agent, who, after Johnson had receipted for the whiskey, delivered it to *Johnson.* Thereupon, after Johnson had paid the agent and opened the box containing the whiskey, Midkiff took one bottle and Johnson took the other from the box. The money was paid to the agent and the box containing the whiskey was opened and the parties took possession of the whiskey in the depot at West Hamlin, where the office of the express company was kept. For Johnson it is contended that the three men were joint purchasers of the whiskey from Stone, and that Johnson was not a seller of whiskey to Adkins and Midkiff.

We think this is the true position. Stone by sending the liquor to Johnson made only a proposal of sale. Before it was consummated by payment of the money and delivery of the liquor, Johnson agreed with Midkiff and Adkins that they should become joint purchasers with him. Title to the liquor had not yet vested in Johnson. He as yet, when the agreement was made between the three, had not possession. While the sale was yet unconsummated, under this agreement the three went together to the express office, and we may say that delivery was made to the three and that they took joint possession and ownership. True, Stone did not know Midkiff and Adkins, nor did he know Johnson. He only made a proposition to Johnson. He did not care who should accept the proposition, as it would not affect his interest. Anyhow, we know of no refusal by him to allow the three to buy. If Johnson had paid for and taken possession of the liquor, and then sold to Midkiff and Adkins, it would be different; but he did not do so. Before acceptance of Stone's proposal, before payment and delivery completing the sale, the three men make an agreement to buy together for their common use,

and go together to get the liquor, and at the office together get possession, and complete the sale. Johnson made no profit. It was a sale by Stone to Johnson, Midkiff and Adkins, not a sale by Johnson to Midkiff and Adkins.

Fault is found with the indictment because it leaves out the word "unlawfully." The word is not necessary. The Code, chapter 32, section 1, does not contain this word. It simply declares that no person without a state license shall sell liquor. The indictment charges that Johnson did sell without license. That being so the offense is complete, because that *per se* necessarily says the act was unlawful. It is sufficient in drafting indictments under statutes, specially statutory offences, to follow the language of the statute. *State* v. *Pennington*, 41 W. Va. 599. This has been decided again and again, and it seems unnecessary to repeat it. If the facts charged do, in law, make up an offence, the use of the word in the indictment is unnecessary. 1 Bishop's Criminal Procedure, section 503; Heard's Criminal Procedure, 159.

Therefore we reverse the judgment, and on the facts agreed find the defendant not guilty, and consider that he be discharged from the indictment and go thereof without day.

*Reversed.*

POFFENBARGER, JUDGE, (*dissenting*:)

Believing the parties to the contract of sale, in the first instance, were Stone and Johnson, and that there was a subsequent sale by Johnson to Midkiff and Adkins, and not merely one sale by Stone to Johnson, Midkiff and Adkins, I am constrained to dissent from the opinion and decision in this case. The whiskey was Stone's. He consigned and shipped it to Johnson. Whether he knew Johnson is immaterial. He knew of him. In some way he had ascertained that there was such a man and he offered to sell him the whiskey for two dollars. He made no offer to either Midkiff or Adkins. Nobody but Stone could have changed his offer of sale to Johnson, so as to make it an offer of sale to Johnson, Midkiff and Adkins. The offer was accepted without any modification and the whiskey delivered in execution of the contract of sale. Legally viewed, as it must be, this effectuated a sale from Stone to Johnson, notwithstanding the

participation of Midkiff and Adkins in the transaction. These two strangers obtained part of the whiskey, and, in legal contemplation, they obtained it from Johnson and not from Stone. The legal test as to what constitutes a sale governs. *State* v. *Flanagan*, 38 W. Va. 53; *Morgan-stern* v. *Commonwealth*, 27 Grat. 1018. The distinction between the legal and practical test in construing statutes, and especially revenue statutes, must be observed. *Harvey Coal & Coke Co.* v. *Dillon*, 59 W. Va. 605; *State* v. *Gray-beal*, 55 S. E. 398. No doubt Johnson, Midkiff and Adkins, viewing the matter from the standpoint of laymen, thought they three jointly were purchasing from Stone, but this was a legal impossibility, without the concurrence of Stone as the seller, and there is no evidence that he consented to the inclusion of Midkiff and Adkins as purchasers. Mere ignorance of the law on the part of Johnson, as to what constitutes a sale, could not excuse him, and his intention is immaterial, for the question on which the soundness of the decision turns in the construction of the statute. What he did brought him within the letter of the statute, and as the plain object of our statutes, regulating the liquor traffic, is to prevent all sales except those made by persons specially licensed therefor, to the end that the revenues of the state may be augmented by the license tax, and the right of sale limited to persons deemed suitable by the license court, when authorized, and entirely prohibited when the license court, in the exercise of its discretionary power, sees fit not to authorize any sales to be made, he was likewise within the spirit of the statute. To allow a consignment to one person in a community, to become a means of sale, in a practical sense, to several persons, will necessarily work a great inroad upon our system of law, ordained for the regulation of the liquor traffic, and open the door for wide and serious evasion thereof.