THE FIDELITY MUTUAL LIFE
INSURANCE COMPANY, *et als.*

*v.*

EDGAR B. SIMS, *Auditor*
OF THE STATE OF WEST VIRGINIA

(CC 811)

Submitted April 20, 1954.   Decided June 8, 1954.

*Steptoe* and *Johnson, Stanley C. Morris, Robert W. Lawson, Jr., Kay, Casto* and *Chaney, Dale G. Casto,* for plaintiffs.

*John G. Fox, Attorney General, Fred H. Caplan, Assistant Attorney General,* for defendant.

LOVINS, JUDGE:

This is a suit brought in the Circuit Court of Kanawha County by the Fidelity Mutual Life Insurance Company, a Corporation, the Lumbermens Mutual Insurance Company, a Corporation, which companies are mutual companies having no capital stock; the Aetna Insurance Company, a Corporation, The Ohio State Life Insurance Company, a Corporation, United States Fidelity and Guaranty Company, a Corporation, all having capital stock. The five plaintiffs were created by the laws of other states and are herein referred to as foreign insurance companies, or plaintiffs.

The suit is brought by the five plaintiffs in behalf of themselves and all other insurance companies, similarly situated, against Edgar B. Sims, Auditor of the State of West Virginia, herein designated as defendant. The purpose of the suit is to enjoin the defendant from proceeding against plaintiffs in the following matters: From certifying to the Governor of the State of West Virginia and the Secretary of State of such State, the names of plaintiffs and all other insurance companies similarly situated,

allegedly delinquent in the payment of corporation license and taxes for the fiscal year beginning July 1, 1951 and ending June 30, 1952; (b) from proceeding further in any way to require the plaintiffs and the other insurance companies similarly situated to qualify with the Secretary of State of West Virginia to do business in this State under the statute pertaining to foreign companies; (c) from collecting or attempting to collect from the plaintiffs and all other insurance companies similarly situated the annual fees and taxes of the same kind as are collected from non-domestic non-insurance corporations.

The trial court, upon presentation of the original bill of complaint, granted a temporary injunction as prayed for therein. Later, the trial court overruled a demurrer to the original bill of complaint. The plaintiff having filed an amended and supplemental bill of complaint, defendant's demurrer to such bill was sustained.

The trial court, of its own motion, certified the following questions to this Court:

"1. Section 6, Article 2, Chapter 33 of the West Virginia Code requires all insurance companies as a pre-requisite to doing business in this State to first comply with all the laws of this State relating to them as corporations, insurance companies or otherwise."

"2. Sections 78 and 80, Article 12, Chapter 11 of the West Virginia Code require both domestic and foreign corporations to pay an annual license fee for the privilege of engaging in business in this State."

"3. Section 88, Article 12, Chapter 11 of the West Virginia Code specifically designates those corporations which are exempt from payment of annual corporate license taxes within said article, and nothing in said section exempts insurance companies from the payment of said license fees or taxes."

"4. The imposition of the annual license taxes under Sections 78 and 80, Article 12, Chapter 11 of the West Virginia Code against insurance corporations or otherwise

are valid, and are not violative of Section 1, Article X of the Constitution of West Virginia, nor Clause 1, Section 10, Article 1 of the Constitution of the United States, nor the Fourteenth Amendment to the Constitution of the United States, nor any other constitutional provision."

"5. The right of the State to have her revenue assessed and collected cannot be lost by the laches of her agents."

"6. A state has the same power to tax foreign insurance companies within its limits that it has with respect to private corporations generally."

"7. The taxes imposed upon insurance companies under Section 8, Article 1, Chapter 33, and Sections 78 and 80, Article 12, Chapter 11 of the West Virginia Code are not dual in nature or purpose, since the former is regulatory and the latter a revenue measure for the privilege of doing business in this State."

The original bill of complaint alleges that the plaintiffs are foreign corporations and are mutual or joint stock companies as hereinabove stated; that such companies engage in life insurance, fire insurance underwriting, casualty and surety underwriting in the State of West Virginia; that other insurance companies similarly situated engage in all kinds of insurance coverage and services.

The defendant is the duly elected, qualified Auditor of the State of West Virginia, having served as such since March 4, 1933. During his term of services, up to and including June 30, 1947, the defendant was Ex Officio Insurance Commissioner of the State of West Virginia. It was the duty of the defendant as such Insurance Commissioner to receive and pass upon the applications of insurance companies for qualification to do business in this State, in accordance with the applicable statutes. The defendant also, during his term as Insurance Commissioner, was authorized to exercise supervision and regulatory power over the business and activity of all insurance companies operating in this State.

A statute effective June 30, 1947, relieved the defendant

of the duties of Insurance Commissioner, and created the office known as the "Insurance Commissioner of West Virginia", who was authorized and required to perform the duties formerly performed by the defendant as Ex Officio Insurance Commissioner. The defendant, however, as Auditor of the State of West Virginia, is now authorized and required to collect certain license and taxes from foreign corporations which may be authorized to do business in this state.

The plaintiffs and a large number of other insurance companies have been qualified and admitted to do business in this state for a considerable length of time. These plaintiffs allege that they, and other insurance companies have been legally and duly qualified and admitted to transact business in this state, in compliance with the applicable statutes, and have furnished various items of information required by statutes and the Insurance Commissioner of West Virginia. They have made the proper reports, paid the proper fees and taxes legally due the state; and have made the reports required of them. Other insurance companies similarly situated have done likewise.

On February 10, 1951, the defendant requested an opinion from the Attorney General of this state. The purpose of such request was to obtain an opinion on the question of whether the plaintiffs and other insurance companies similarly situated are required by the laws of this state to be admitted to do business in this state by the Insurance Commissioner, as well as by the Secretary of State, in the same manner as foreign non-insurance corporations.

The Attorney General replied to the communication from the defendant to the effect that the plaintiffs and other insurance companies similarly situated are under the legal duty to qualify to do business in this state not only by the Insurance Commissioner, but also by the Secretary of State, in the same manner as other foreign corporations, and that the plaintiffs and other insurance companies similarly situated are required to pay the annual fees and taxes exacted and collected from foreign non-insurance corporations.

The Insurance Commissioner of the State of West Virginia, as of April 1, 1951, issued certificates of authority to these plaintiffs and other insurance companies similarly situated, authorizing them to transact their respective businesses in this state for the tax year April 1, 1951 to March 31, 1952, inclusive.

The defendant, under date May 18, 1951, made a demand for the payment of additional fees and taxes in accordance with the opinion of the Attorney General for the period of four prior fiscal years, and for the current fiscal year ending June 30, 1951.

Thereafter, in accordance with the existing statute on or about October 10, 1951, these plaintiffs and many other insurance companies similarly situated, having failed to pay certain taxes and penalties which the defendant contends they owe, the defendant submitted to the Attorney General a list of approximately 354 ordinary insurance companies, 46 companies engaged in the business of re-insurance, 75 companies insuring people on the mutual plan and 15 reciprocal insurance companies, totalling 490 companies, and asserted claims for taxes as follows: For ordinary insurance companies, approximately $353,331.50; for re-insurance companies, $44,726.00; for reciprocal insurance companies, $15,300.00; for mutual insurance companies, $72,148.50; aggregating a total of approximately $485,506.00.

Plaintiffs further aver that unless restrained, the defendant would within thirty days after November 1, 1951, submit a similar list to the Secretary of State and the Governor of the State of West Virginia, and would charge the plaintiffs and other insurance companies similarly situated, with being delinquent in the payment of fees and taxes for the fiscal year beginning July 1, 1951.

The Governor, upon receipt of the list so furnished by the defendant would be required to issue a proclamation declaring plaintiffs and other insurance companies similarly situated to be delinquent in the payment of taxes

and fees due the state, and that such proclamation would be published in each of the Congressional Districts of this state.

It is also averred by the plaintiffs that after the date of the publication, the Attorney General of this state, within sixty days, would be required to institute a suit in the name of the state to revoke the rights and privileges of the plaintiffs and other insurance companies to transact business in this state, to procure the appointment of a receiver and a decree marshaling their assets for the purpose of making sale of same. Plaintiffs allege that if the proclamation should be published and suits brought that irreparable injury would be inflicted upon their policy holders in this state, and the policy holders of other insurance companies doing business therein; and that great and irreparable injury would be inflicted upon the plaintiffs and other insurance companies similarly situated and upon their stockholders, agents and employees.

Plaintiffs aver that the statutes under which the defendant claims that they have failed to qualify is separate and distinct from the statutes providing for the qualifications and admission of foreign insurance companies to do business in this state. Plaintiffs further aver that hitherto, the incumbent officers of the state have applied the statutes here in question so as not to require the additional qualification and payment of taxes as claimed by the defendant.

Plaintiffs deny that they are subject to the demands relative to their qualifications and payments of taxes as shown by the contention of the Auditor and that such additional taxes should not be exacted from them, they having paid all of the fees and taxes required by their qualification with the Insurance Commissioner of this State. They pray for relief as above noted and for general relief. As stated, the demurrer to the original bill of complaint was overruled.

The supplemental bill of complaint filed by the plaintiffs alleges that certain bills were introduced in the House of Delegates and Senate of the Legislature of 1953, Regular

Session. The purpose and object of such bills, according to appended explanations, were to require by explicit words foreign insurance corporations to qualify as other foreign corporations with the Secretary of State; and to pay the taxes claimed by the defendant to be due.

The supplemental bill alleges that the proposals contained in such bills were rejected. As stated above, the defendant's demurrer to the supplement bill of complaint was sustained.

There are seven questions certified which are copies verbatim of the grounds of demurrer to the original bill of complaint. Those questions may be summarized as follows: Are foreign insurance companies required to qualify under Code 31-1-79 and Section 80, Chapter 119, Acts of the Legislature, 1939, Regular Session, (Michie's Code, 1949, Serial Section 935), as well as under Code 33-2-5, 6, as insurance corporations; or, is one qualification by the Insurance Commissioner of West Virginia sufficient to admit them to do business in this state, regardless of the provisions of Code 31-1-79, and Section 80 *idem?* We direct attention to a comment on a similar situation in the case of *LaFollette* v. *City of Fairmont,* 138 W. Va. 517, 76 S. E. 2d 572, 576. In the instant case, the certified questions lack conciseness.

We do not think that for the purpose of this opinion there is any reason to distinguish between mutual and capital stock insurance companies. Unless otherwise provided for by statute, mutual insurance companies are included under a general law which by its terms, is applicable to all insurance companies. *Shinn* v. *Ins. Co.,* 104 W. Va. 353, 363, 140 S. E. 61. See 29 Am. Jur., Insurance, § 52; 44 C. J. S., Insurance, §104; 10 M. J. Insurance, §70.

An insurance company is defined by statute as meaning: "* * * all insurers or insurance carriers, including, but not limited to, stock insurance companies, mutual insurance companies, reciprocal and inter-insurance exchanges, and all other types of insurers and insurance carriers." Sec-

tion 3 (a), Chapter 103, Acts of the Legislature, 1947, Regular Session.

Of course, in their organization and methods, mutual insurance companies are different from joint stock companies. A mutual company is defined by statute as follows: "Every company or association which issues to its members certificates or policies agreeing to pay certain benefits to the beneficiaries thereunder, which benefits are, by the contract therefor, to be realized from assessments levied upon the members of said company or association, or any part thereof, shall be deemed a company for the mutual protection of its members." Code, 33-3-11.

Farmers mutual insurance companies are separately treated by the statutes of this state. See Chapter 57, Acts of the Legislature, 1935, Regular Session. Mutual insurance companies and farmers mutual insurance companies may be distinguished in that they have no capital stock. A discussion differentiating the characteristics of such companies from an ordinary capital stock insurance company would serve no useful purpose, except that it may be pointed out that the tax levied on foreign corporations by section 80 of Chapter 119, Acts of the Legislature, 1939, Regular Session, is measured by the amount of the authorized capital stock of such company, though some corporations issue capital stock of no par value.

Hereinafter, we shall treat all insurance companies having capital stock, as well as mutual insurance companies, as being subject to the same regulatory statutes.

Section 76, Chapter 119, *idem* classifies corporations for the purpose of taxation on charters or certificates of corporations as domestic and foreign corporations. A domestic corporation is one incorporated under, or by the laws of this state, or under the laws of the State of Virginia before the 20th day of June, 1863, and having its principal place of business and chief works, if it has one, in this state. Every other corporation is a foreign corporation.

Under Section 78, Chapter 119, *idem,* domestic corpora-

tions are required to pay an annual license tax on its charter for a fiscal year beginning on the 1st day of July of each year, which is measured by the amount of authorized capital stock. The taxes so assessed range from $20.00 per year to $2500.00 per year. Corporations issuing no par value stock must likewise pay a tax on such capital stock calculated at a value of $25.00 for each share.

Section 80, Chapter 119, *idem* provides: "Every foreign corporation holding property or doing business in this state shall make report to the auditor annually in the third month preceding the beginning of the license tax year, in which report shall be set out: * * *", certain information specifically listed in the statute. Section 80, *idem* likewise makes it the duty of the auditor of the state to assess and fix the license tax for foreign corporations, according to the rates prescribed in section 78 of Chapter 119, *idem,* plus 50% of such taxes.

We direct attention to the mandatory language of Section 80, Chapter 119, *idem* and the following language in Code 31-1-79, which reads in part as follows: "Any corporation duly incorporated by the laws of any other state or territory of the United States, the District of Columbia, or of any foreign country, may, *unless it be otherwise expressly provided,* hold property and transact business in this State, upon complying with the provisions of this section and not otherwise." [emphasis supplied]. It is unnecessary, however, to quote Code, 31-1-79 in full. It suffices to say that there are a number of conditions and provisions in Code, 31-1-79, which are irrelevant to the question here presented. The sweeping language of Code, 31-1-79 would ordinarily include foreign insurance companies, in the absence of the phrase "unless it be otherwise expressly provided".

It is otherwise provided with reference to foreign insurance companies. Insurance companies, domestic and foreign, cannot enter into a contract of insurance, or engage in a business of insurance until they have qualified with the Insurance Commissioner of West Virginia,

under the provisions of Code, 33-2-5 and 6. Section 6, *idem,* provides as follows: "No insurance company or association shall transact the business of insurance, enter into any contract of insurance, or issue or deliver within this State any policy or contract of insurance, until such company or association shall have complied with all the laws of this State relating to it as a corporation, insurance company or otherwise, nor until it shall have obtained the license, or certificate of authority, mentioned in the preceding [5] section." An examination of the various statutes relating to insurance companies will disclose that numerous statutory and detailed regulations are provided by the legislature in Chapter 33, Code, as amended. We think that the provisions of Code, 33-2, amended, as hereinafter noted, are sufficient to comply with the provisions of Code, 33-2-6, as above quoted.

The admission of foreign non-insurance corporations to transact business in this state is governed by section 80 of Chapter 119, Acts of the Legislature, 1939, and section 79 of Chapter 31, Code, which should be read together. But the broad power of a state to exclude corporations as stated in *Paul* v. *Virginia,* 8 Wallace 168, has been modified by subsequent decisions of the Supreme Court of the United States. See *U. S.* v. *Underwriters Assn.* 322 U. S. 533, 544, et seq., 64 S. Ct. 1162, 88 L.Ed. 1440, wherein it was held that insurance transacted across state lines is subject to regulation under the commerce clause of the Federal Constitution.

In *Frost* v. *Railroad Commission,* 271 U. S. 583, 46 S. Ct. 605, 70 L.Ed 1101, it is held that the power of the state to impose conditions on the admission of a foreign corporation is limited so that a state may not require, as a condition of such admission, the relinquishment of a constitutional right. See *Western U. Teleg. Co.* v. *Kansas ex rel. Coleman,* 216 U. S. 1, 30 S.Ct. 190, 54 L.Ed. 355.

We think that upon consideration of the applicable statutes, the intent of the legislature is clear, which was: to set foreign insurance corporations apart from an ordi-

nary non-insurance foreign corporation transacting other business. The statutes applying to non-insurance foreign corporations do not apply to foreign insurance corporations for the reason that foreign, as well as domestic insurance companies, are extensively regulated by the pertinent statutes contained in Code, Chapter 33, and especially by article 2 of that chapter as amended by Chapter 58, Acts of the Legislature, 1935, Regular Session; Chapter 74, Acts of the Legislature, 1945, Regular Session; Chapter 68, Acts of the Legislature, 1949, Regular Session and Chapter 102, Acts of the Legislature, 1947, Regular Session, and for other reasons to be hereinafter discussed.

As disclosed by Chapter 33, as amended, this state has established a system of admission of foreign insurance corporations to do business in this state.

A question similar to that here presented was disposed of in the case of *St. Louis, I.M. & S. Ry. Co.* v. *Commercial Union Ins. Co.*, 139 U. S. 223, 11 S.Ct. Rep. 554, 35 L.Ed. 154. In that case, it was held that a qualification by a foreign insurance company under a system provided for foreign insurance companies was sufficient. Under a statute similar to those considered in the instant case, the Supreme Court of Iowa held: "Foreign life insurance corporation, duly licensed by state insurance commissioner to transact business in state after compliance with governing statutes, *held* not required to comply with statutes applicable to foreign corporations generally, nor to obtain permit from secretary of state as condition precedent to transaction of business." Fourth headnote, *John Hancock Mut. Life Ins. Co.* v. *Lookingbill,* (Iowa) 253 N. W. 604. See *State* v. *Prudential Ins. Co. of America,* (Okl.) 68 P. 2d 852; *Carlin* v. *Prudential Ins. Co. of America,* (Okl.) 52 P. 2d 721; *Union Central Life Ins. Co.* v. *Rahn,* (Idaho) 118 P. 2d 717.

Plaintiffs contend that the action of the officers of this state charged with the administration of the systems of qualification, licensing, regulations and taxation, in not having heretofore required foreign insurance corporations to comply with the regulatory and taxing statutes applic-

able to foreign non-insurance corporations, should be given effect in the consideration of the question here presented. We think that the contemporaneous construction of the statute by administrative officers, as contrasted with the application of such statutes, should be considered. But here, the controlling statutes are clear, plain and without ambiguity, and need no construction. *Douglass* v. *Koontz,* 137 W. Va. 345, 71 S. E. 2d 321. The application however of such statutes to the admission and licensing of foreign insurance companies, as well as foreign non-insurance companies should be considered. We have found no case where the precise question here presented has been heretofore raised in this jurisdiction. It is alleged in the bill of complaint, at least by implication, that no effort has been heretofore made to compel double qualification of a foreign insurance company. To us, this means that the defendant in the instant case has attempted to depart from an accepted practice and application of statutes to foreign insurance companies.

The fourth point of the syllabus of *State* v. *Davis,* 62 W. Va. 500, 60 S. E. 584, reads as follows: "A contemporary exposition of a statute, uncertain in its meaning, recognized and acquiesced in, for a long period of time, by the officers charged with the duty of enforcing it, the courts, the Legislature and the people, will be adopted unless it is manifestly wrong." See *Ballard* v. *Vest,* 136 W. Va. 80, 65 S. E. 2d 649.

The above quotation does not, however, fit this case exactly, as we have said that the statutes in this case are certain in their meaning. Moreover, the application made by officers charged with the duty of enforcing these statutes is not manifestly wrong. See *Wilson* v. *Hix,* 136 W. Va. 59, 65 S. E. 2d 717; *State* v. *County Court Kanawha County,* 137 W. Va. 127, 70 S. E. 2d 260; *State* v. *Sims, Auditor,* 134 W. Va. 428, 433, 59 S. E. 2d 705.

It is to be noted that in a number of cases, this Court has decided a related question as to construction of statutes, rather than application, but we think that a similar princi-

ple is useful in the application of a statute or statutes as distinguished from construction thereof. We are therefore disposed to attach some weight to the application of the statutes here considered by the present and former officers of this state charged with the duty of applying and enforcing them.

The plaintiffs rely on the case of *Insurance Co.* v. *Secretary Dawson,* 53 W. Va. 619, 46 S. E. 51. An examination of the opinion in that case shows that the question really before the Court was whether the relator insurance company should, under the then existing statutes, qualify as a foreign insurance company, or as a foreign corporation. Under the statutes as they then existed, this Court held that the relator in the case of *Insurance Co.* v. *Secretary Dawson, supra,* was not required to qualify as an insurance company and secure a certificate to do business in this state from the auditor who then was the supervising officer for insurance companies, and accordingly this Court granted a mandamus requiring the Secretary of State to issue a certificate to the relator as a foreign corporation.

Implicit in this decision, however, is the thought that only one qualification would be required and the various expressions in the opinion, by way of *obiter dictum,* indicate that only one qualification was required in that case.

The dissenting opinion likewise indicates that only one qualification was required. Where the division of the Court arose was on the question of whether the relator was an insurance company within the meaning of the statute then in force, or whether it was a foreign corporation. The Courts' opinion held that it was a foreign corporation. The dissenting opinion argued that it was an insurance company, and therefore required to qualify as such insurance company.

We consider the case of *Insurance Co.* v. *Secretary Dawson, supra,* as being strongly persuasive in support of plaintiffs' position in this case, but we do not think it is a binding precedent.

It is contended by the plaintiffs that the defendant pro-

poses to impose dual qualification and dual taxation upon insurance companies. The power of taxation is of necessity, a strong and necessary function of government. Such power has been circumscribed by constitutional safeguards contained in the Federal Constitution and the organic laws of this State. The state is not authorized to collect double taxation on the same land held under the same title. *State* v. *Allen,* 65 W. Va. 335, 64 S. E. 140. See *Ramsburg* v. *Jones,* 104 W. Va. 498, 140 S. E. 485.

In applying a statute, it is presumed that it was not the legislative intent to impose double taxation in the absence of a clear manifestation of such intent. *State ex rel. Dillon* v. *Graybeal,* 60 W. Va. 357, 55 S. E. 398. But since we have held that the statutes relating to non-insurance foreign companies have no application to insurance companies, the question of dual taxation is obviated.

For the reason just stated, we are not called upon to discuss the alleged violation of Federal and State Constitutions, nor the lack of definite standards.

The second bill filed by the plaintiffs is denominated an amended and supplemental bill. The record discloses that the facts alleged in the second bill occurred after the filing of the original bill. Therefore, strictly speaking, the second bill of complaint is a supplemental bill. See *Straughan* v. *Hallwood,* 30 W. Va. 274, 292, 4 S. E. 394; *Bird* v. *Stout,* 40 W. Va. 43, 48, 20 S. E. 852. However, the improper designation of the second bill of complaint is not a ground for reversal or objection, being obviated by a long and continued practice and the principles stated as follows: "In our practice we are not careful to observe some of the distinctions between bills in naming them—as, for example, between a bill of amendment and supplemental bill—but we take them to be what they are in fact, without regard to the name given them." *Shinn* v. *Board of Education,* 39 W. Va. 497, 504, 20 S. E. 604.

"According to the ancient and strict rules of pleading matters, which occurred after the filing of the original bill could not be introduced into the suit by an amended but only by a supplemental bill, but this rule is not now enforced, and such matters may be introduced by amended

bill." *Crumlish* v. *Railroad Co.*, 28 W. Va. 623. See Hogg's Equity Procedure, Miller, §§§ 192, 199 and 349; 1 M. J. Amendments, §38.

The amended and supplemental bill of complaint is without equity and there is no merit in the contention of plaintiffs with reference thereto. It is not the duty of the legislature to construe or enforce the laws. It is their duty to enact them. This Court must of necessity, deal with the law as it is, not what it might have been had the legislature acted in a different manner. *Coal Co.* v. *Alderson*, 125 W. Va. 747, 26 S. E. 2d 226.

In accordance with what we have said, the ruling of the Circuit Court of Kanawha County, overruling the demurrer to the original bill is affirmed; the ruling of that Court in sustaining the demurrer to the supplemental bill is likewise affirmed. The specific certified questions are fully answered by the foregoing.

*Rulings affirmed.*